IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ASOMAH MAAMAH, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. GLR-22-807 (Rel. Crim. Case GLR-21-167) |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

\*\*\*

# ORDER

Pending before the Court is Petitioner Asomah Maamahs' ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 129).[1] The Government opposes the Motion. (ECF No. 132). The Motion is ripe for disposition and no hearing is necessary. See R. Govern. § 2255 Cases U.S. Dist. Ct. 8(a); Local Rule 105.6 (D.Md. 2021). For the reasons stated below, the Court will deny the Motion.

## I.   BACKGROUND

On February 25, 2020, the Government charged Petitioner with transportation of stolen vehicles in violation of 18 U.S.C. § 3212. (Criminal Compl. at 1, ECF No. 1). That same day, the Court issued an arrest warrant and Petitioner was arrested on March 4, 2020. (Arrest Warrant at 1, ECF No. 10).[2] On June 03, 2021, Petitioner waived his rights to

---

[1] Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/EF") system for Case No. 1:21-cr-00167-GLR-1 (D.Md.).

[2] The procedural docket in this case is extensive and thus the Court includes only the relevant procedural history.

prosecution by grand jury indictment, signed a plea agreement, and pleaded guilty to Conspiracy to Commit Interstate and Foreign Transport Stolen Motor Vehicles, in violation of 18 U.S.C. §§ 371, 2312 (Count One), and Knowingly Transporting Stolen Vehicles, in violation of 18 U.S.C. § 2312 (Count Two). (ECF Nos. 87, 90). The parties stipulated the following facts in the Plea Agreement:

> The [Petitioner's] criminal conduct involved . . . the shipment/attempted shipment of at least 17 stolen/fraudulently obtained cars worth . . . more than $863,653 . . . . The scheme worked as follows: [Petitioner] and his co-conspirators would obtain stolen or fraudulently obtained cars . . . . Those vehicles would then be loaded into shipping containers that would be declared for exportation to foreign destinations, often Africa.
> [Petitioner] and his co-conspirators . . . would facilitate the creation of fraudulent paperwork to give to customs officials . . . . On one occasion, in late 2018, [Petitioner] was observed at the scene when a vehicle was loaded into a shipping container with accompanying paperwork listing "Tutu Seth" as the exporter and falsely listing a different car . . . .
> During a post-*Miranda* interview, [Petitioner] largely denied any knowledge of exportation of stolen/fraudulently obtained vehicles . . . . [and] gave consent for investigators to search his iPhone X . . . .
> [Petitioner] would communicate with shipping companies to facilitate the shipment of the stolen and fraudulently obtained vehicles to foreign destinations.
> [Petitioner's] iPhone X showed . . . numerous photographs of vehicles identified as stolen, . . . photographs of cars with obscured license plates, . . . [and] a WhatsApp conversation where [petitioner] and another person were messaging about a container . . . that was found to contain two falsely declared and fraudulently obtained/stolen vehicles.
> At the time of [petitioner's] arrest, he was found inside a vehicle that had been fraudulently rented from a rental car company . . . . During [petitioner's post-*Miranda*] statement, [he] . . . made incriminating admissions . . . .

(Plea Agreement at 11–15, ECF No. 90).

2

During the Petitioner's Rule 11 proceeding, Petitioner confirmed that he fully discussed the charges and case with his attorney. (Rule 11 Hr'g Tr. at 8:3–6, ECF No. 109 (responding yes to the question, "Mr. Maamah, have you fully discussed the charges in the information and the case in general with your attorney?")). Petitioner also confirmed he was fully satisfied with the legal representation provided (Id. at 8:7–13 (responding yes to the question, "Are you fully satisfied with the legal representation that you've received from your attorney?")). Additionally, Petitioner confirmed he voluntarily agreed to the Plea Agreement after carefully reviewing every part of it with his attorney. (Id. at 10:5–11:19 (responding no to the question, "Has anyone made any threats or used force or violence against you or someone close to you in order to persuade you to accept the agreement?")). Further, Petitioner confirmed that the Government's statement of facts was an accurate summary of the facts it would present if the case were to go to trial. (Id. at 23:17–24:4 (responding yes to the question, "And by signing Attachment A you agree that the facts contained within Attachment A are true and accurate; is that correct, sir?")). Finally, petitioner confirmed he had no hesitancy about voluntarily pleading guilty to both Count One and Count Two. (Id. at 26:25–28:5 (responding no to the question, "Most importantly, Mr. Maamah, do you have any questions or hesitancy whatsoever about pleading guilty here today?")).

On July 12, 2021, the Court received Petitioner's Presentence Investigation Report and Recommendation ("PSR"). (ECF No. 94). On August 20, 2021, the Court accepted the terms of the written plea agreement and sentenced Petitioner to 60 months as to Count One and 84 months as to Count Two, to run concurrently for a total of 84 months, with credit

for time served. (J. Criminal Case at 2, ECF No. 100). On August 27, 2021, Petitioner appealed his conviction and sentence to the United States Court of Appeals for the Fourth Circuit. (ECF No. 103). On April 04, 2022, Petitioner filed a Motion to Vacate under 28 U.S.C. § 2255. (ECF No. 115). On April 05, 2022, this Court ordered the Government to respond to the Motion to Vacate within 60 days. (Apr. 5, 2022 Order at 1, ECF No. 116). On April 18, 2022, the Fourth Circuit affirmed this Court's conviction and sentence judgment. (ECF No. 117). On July 11, 2022, Petitioner filed a Motion to Withdraw the Motion to Vacate. (ECF No. 123). On July 14, 2022, this Court granted Petitioner's Motion to Withdraw. (Jul. 14, 2022 Order at 1, ECF No. 125).[3] On August 08, 2022, Petitioner filed a second Motion to Vacate. (ECF No. 129). On August 11, 2022, this Court ordered the Government to file a response as to the second Motion to Vacate on or before October 12, 2022. (Order at 1, ECF No. 131). The Government filed an Opposition on August 23, 2022. (ECF No. 132).[4]

## II.   DISCUSSION

### A.   Standard of Review

Under 28 U.S.C. § 2255(a), a prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence" if the petitioner can show

---

[3] After the Motion to Withdraw was granted, Petitioner filed a Motion to Reinstate the Motion to Vacate citing error. (July 25, 2022 Correspondence, ECF No 126; Aug. 2, 2022 Correspondence, ECF No. 127). This Court denied the Motion. (Aug. 11, 2022 Order at 1, ECF No. 130).

[4] Subsequently, on November 10, 2022, Petitioner filed a Motion for Compassionate Release (ECF No. 138), and on January 30, 2023, the Government responded in opposition, (ECF No. 153).

4

"that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." The Court liberally construes a self-represented movant's arguments. See Gordon v. Leeke, 574 F.2d 1147, 1151–53 (4th Cir. 1978). However, if the § 2255 motion, in addition to the files and records, conclusively shows that the petitioner is entitled to no relief, then no hearing is required, and the motion may be summarily denied. See 28 U.S.C. § 2255(b).

**B.     Analysis**

Petitioner alleges that his counsel was constitutionally ineffective. (Pet'r's Mot. Vacate, Set Aside, Correct Sentence ["Mot."] at 5–9, ECF No. 129). Ineffective assistance of counsel claims are governed by the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which requires a petitioner to show (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. Id. at 687. A petitioner satisfies the first prong only if the counsel's performance "fell below an objective standard of reasonableness." Id. at 688. The "first prong sets a high bar," Buck v. Davis, 580 U.S. 100, 118 (2017), as there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. To establish prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Notably, a failure to satisfy either prong is fatal, so a court need not address both prongs if a defendant "makes an insufficient showing on one." Id. at 697.

5

Petitioner lists four grounds for his ineffective assistance of counsel claim: (1) counsel fell asleep and was unconscious at the sentencing hearing and never reviewed the PSR with him; (2) counsel failed to investigate his claim that he was only involved with four, not seventeen, cars, his attorney refused to communicate and never explained the charges or the offenses, and he failed to withdraw when fired; (3) counsel did not review or investigate the PSR, that he "railroaded" him, and that he failed to provide an interpreter; and (4) appellate counsel failed to request a hearing en banc or file a writ of certiorari. (Mot. at 5–9). The Court will address each in turn.

### 1.     Failure to Stay Awake and Review the PSR with Petitioner

First, Petitioner argues that his counsel was constitutionally ineffective for failing to stay awake during the sentencing hearing and for not reviewing the PSR with him. (Id. at 5). The Government responds that there is no support for the notion that Petitioner's attorney fell asleep at the sentencing hearing. (Resp't's Resp. Def.'s Mot. Vacate, Set Aside, Correct ["Opp'n"] at 7, ECF No. 132). At bottom, Petitioner's allegation is meritless and directly contradicted by the hearing transcript and his sworn statements. (See generally Sentencing Hr'g Tr. at 3–22, ECF No. 132-2).

During the hearing, this Court asked Petitioner twice if he had the opportunity to review the PSR with his attorney, and both times Petitioner responded, "Yes." (Id. at 3). Moreover, this Court asked if all of Petitioner's questions about the report had been answered, to which he responded, "Yes, Your Honor." (Id.). Further, throughout the entire hearing, Petitioner's attorney was alert and responsive to the Government and this Court's questions and advocated on behalf of the Petitioner. (See id. at 3–22). Specifically,

6

Petitioner's attorney negotiated with the Government for the imposition of a sentence of 84 months, the bottom of the 84 to 105 month sentencing range. (Id. at 8). Petitioner's attorney further advocated on Petitioner's behalf by explaining his legitimate employment history prior to a very serious forklift injury; his need to self-medicate with alcohol, marijuana, and prescription drugs to manage his chronic pain; his health challenges as a result of COVID-19, high blood pressure, and ongoing heart issues; his aspirations to pursue petroleum engineering; his strong family support and their desire for leniency so he could support his ill father; the non-violent nature of his crime; and Petitioner's remorse, commitment to rehabilitation, and desire to become a responsible, law-abiding member of the community. (Id. at 8–10.).

Accordingly, because Petitioner's allegations are in direct conflict with the hearing transcript and Petitioner's sworn statements, Petitioner has failed to demonstrate that his counsel acted unreasonably under the first Strickland prong and the Court will not find counsel ineffective on this ground.

### 2. Failure to Conduct Adequate Investigation, Communicate Charges, and Failure to Withdraw When Fired

Next, Petitioner argues that his counsel was constitutionally ineffective for failing to conduct an adequate investigation, communicate the charges and terms of imprisonment, and "withdraw upon being fired." (Mot. at 6). Specifically, Petitioner alleges that counsel failed to investigate Petitioner's claims that there "were only four, and not seventeen cars" that he was responsible for shipping. (Id.). Petitioner claims that but for the inclusion of an additional thirteen cars, he would have received a lower sentencing range. (See id. at 2).

7

As to the first allegation, a "conclusory claim that [] counsel was deficient for failure to investigate exculpatory evidence cannot prevail [when a petitioner] does not provide the court with more specific details regarding what the investigation would have revealed." D'Amico v. United States, No. RWT-10-777-3, 2018 WL 3707831, at *3 (D.Md. Aug. 2, 2018); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal."); United States v. Fabian, 798 F.Supp.2d 647, 671 (D.Md. 2011) (finding that petitioner failed to show prejudice where he did not identify a single witness who, if interviewed, would have changed the outcome at trial). Here, Petitioner does not identify any exculpatory evidence that his counsel failed to account for or explain what information would have been revealed to the defense had counsel investigated further. Because Petitioner does not describe in any detail the information further investigation would have uncovered and why that information would have changed the outcome of the proceedings, this allegation fails the second Strickland prong.

Petitioner's second allegation that his counsel failed to communicate the charges and terms of imprisonment fails because it directly contradicts sworn statements about his knowledge of the charges, prison sentence, and the adequacy of his attorney's representation during the Rule 11 hearing. (Rule 11 Hr'g Tr. at 2–4, 8, ECF 132-1); see United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the

sworn statements."). During Petitioner's Rule 11 hearing, this Court asked Petitioner if he understood that he was accused of Conspiracy to Knowingly Transport Stolen Vehicles and Knowing Transportation of Stolen Vehicles, consented in writing to waive the indictment, was advised "to the nature of the charges and your rights that you hereby waive," and if he signed that waiver. (Rule 11 Hr'g Tr. at 3, ECF 132-1). Petitioner responded, "Yes, Your Honor." (Id.). Moreover, this Court asked Petitioner if he had read the criminal indictment or had the substance of the charges been explained to him. (Id. at 4). Petitioner again responded, "Yes." (Id.). Next, this Court asked Petitioner if he understood the charges placed against him, to which he responded, "Yes, sir." (Id.). Petitioner's attorney further confirmed that he understood the charges, and then Petitioner plead guilty to the two-count criminal indictment. (Id.). Additionally, this Court asked Petitioner if he had fully discussed the charges in the indictment and the case in general with his attorney, to which he responded, "Yes, Your Honor." (Id. at 8). Finally, this Court asked Petitioner if he was fully satisfied with the legal representation and if he believed his attorney was a zealous and effective legal advocate. (Id.). Petitioner responded, "Yes, Your Honor, 100 percent." (Id.). Because Petitioner's allegations that his counsel failed to communication the charges and terms of imprisonment are directly contradicted by his testimony, Petitioner's counsel did not act unreasonably under the first prong of the Strickland test.

  Petitioner's third claim that his counsel "refused to withdraw upon being fired" is meritless. Generally, conclusory allegations unsupported by specifics are subject to summary dismissal. See Blackledge, 431 U.S. at 74 ("The subsequent presentation of

9

conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Here, Petitioner's claims are not supported by any specifics of when or how his counsel was fired or how his counsel refused to withdrawal. Additionally, the record contradicts Petitioner's contentions. Petitioner signed a plea agreement which reads in part: "I am completely satisfied with the representation of my attorney." (Plea Agreement at 10). Moreover, Petitioner's counsel continued to represent him throughout the Rule 11 hearing and sentencing, during which time he told the Court his counsel was a zealous and effective legal advocate. (Rule 11 Hr'g Tr. at 8, ECF 132-1). As Petitioner's allegations are unsupported by specifics and are contradicted by the record, counsel will not be found ineffective on these grounds.

### 3. Failure to Investigate the PSR and Provide an Interpreter

Petitioner next asserts his counsel was ineffective because counsel failed to investigate the PSR, counsel "railroaded" him, and counsel did not provide an interpreter, so Petitioner did not receive a "full fair hearing." (Mot. at 7–8). As to the failure to investigate the PSR allegation, a "conclusory claim that [] counsel was deficient for failure to investigate exculpatory evidence cannot prevail [when a petitioner] does not provide the court with more specific details regarding what the investigation would have revealed." D'Amico, 2018 WL 3707831, at *3; see also Blackledge, 431 U.S. at 74. Here, Petitioner does not identify any evidence that his counsel failed to account for or explain what information would have been revealed to the defense had counsel investigated the PSR further. Because Petitioner does not identify the information further investigation would

have uncovered and why that information would have changed the outcome of the proceedings, Petitioner's failure to investigate allegation fails the second Strickland prong.

Petitioner's allegations that counsel "railroaded" him and did not provide an interpreter also fail because they directly contradict sworn statements about his attorney's representation and his ability to read and understand English. See Lemaster, 403 F.3d at 221–22 ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."). During Petitioner's Rule 11 hearing this Court asked Petitioner how far he went in school, to which he responed "College." (Rule 11 Hr'g Tr. at 6). This Court then asked him if he could read, write, and understand the English language, to which Petitioner responded, "Yes, Your Honor." (Id.). Next, this Court asked him if he had any difficulty understanding during the Rule 11 hearing, to which he responded, "No." (Id.). Additionally, this Court asked him if he had fully discussed the case and charges with his attorney, to which he responded, "Yes, Your Honor." (Id. at 8). Finally, this Court asked if Petitioner was fully satisfied with the legal representation he received from his attorney, to which he responded, "Yes, Your Honor, 100 percent." (Id.). Because Petitioner's sworn statements contradict his allegations of being "railroaded" by his attorney and the need for an interpreter to receive a "fair full hearing," counsel will not be found ineffective on these grounds.

11

### 4. Failure to Request a Hearing En Banc or File a Writ of Certiorari

Finally, Petitioner alleges that his appellate counsel was ineffective because counsel failed to request a hearing en banc or file a writ of certiorari. (Mot. at 9). As to Petitioner's argument concerning the hearing, failure to seek a hearing en banc cannot serve as the basis for an ineffective assistance of counsel claim. See Thomas v. United States, No. RDB-14-2085, 2016 WL 5372316 at *9 (D.Md. Sept. 26, 2016) ("This assertion overlooks the well-established principle that there is no constitutional right to counsel for discretionary appeals, including, inter alia, seeking a rehearing or a rehearing en banc." (citing White v. United States, No. 08CR54, 2013 WL 1497579, at *4 (W.D.Va. Apr. 11, 2013))). Because there is no constitutional right to counsel, failure to seek a hearing en banc cannot serve as ineffective assistance of counsel grounds. Id. (first citing Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); and then citing United States v. Williamson, 706 F.3d 405, 416 (4th Cir. 2013)).

Petitioner's argument concerning failure to file a writ of certiorari is also meritless because failure to file a writ of certiorari does not constitute ineffective assistance of counsel. See Renteria v. United States, Nos. 12-CR-37-FA-10, 18-CV-24-FA, 2021 WL 1234510, at *8 (E.D.N.C. Apr. 1, 2021) ("There is no constitutional right to the assistance of counsel in filing a petition for a writ of certiorari." (quoting United States v. McCall, No. 10CR170-15, 2014 WL 4292828, at *5 (E.D.Va. Aug. 29, 2014))). This is also the case if appellate counsel failed to follow the Fourth Circuit's Criminal Justice Act Plan's ("CJA") appellate notice and assistance requirements. Id. at *8 ("Courts have concluded that a counsel's failure to follow the Fourth Circuit's CJA plan does not give rise to a claim

of ineffective assistance of counsel." (citing Moody v. United States, Nos. 5:13-CR-00065-F, 5:15-CV-00490-F, 2016 WL 3023264, at *2 (E.D.N.C. May 24, 2016))). Because failure to request a hearing en banc or file a writ of certiorari are not ineffective assistance of counsel grounds, Petitioner's final two arguments fail.

In sum, the Court finds that Petitioner's claims are without merit, and the Court will deny the Motion. (ECF No. 129).

### III.    CERTIFICATE OF APPEALABILITY

Under Rule (a) of the Rules Governing Proceedings pursuant to 28 U.S.C. § 2255, the Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a jurisdictional prerequisite to appeal from the Court's Order. United States v. Hadden, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability will not issue unless the petitioner can "demonstrate both (1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right'; and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Rose v. Lee, 252 F.3d 676, 684 (4th Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Where a court denies a petitioner's motion on its merits, the petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. For the reasons set forth above, the Court concludes that Petitioner has not provided a basis to issue a certificate of appealability because

reasonable jurists would not find Petitioner's claims debatable. Thus, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, it is this 22nd day of March, 2023, hereby:

ORDERED that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 129) is DENIED;

IT IS FURTHER ORDERED that a certificate of appealability shall NOT ISSUE; and

IT IS FURTHER ORDERED that the Clerk is directed to CLOSE the case.

/s/
George L. Russell, III
United States District Judge